**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **ROCHELLE DAVENPORT,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 06 C 4614** |
| | ) | |
| **JOHN E. POTTER, Postmaster General of** | ) | |
| **the United States Postal Service,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

MATTHEW F. KENNELLY, District Judge:

*Pro se* plaintiff Rochelle Davenport has filed a complaint of employment discrimination against her former employer John E. Potter, Postmaster General of the United States Postal Service. Davenport alleges that she was improperly terminated from her employment with the Postal Service in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-16; the Americans with Disabilities Act of 1990, 42 U.S.C. § 12112(a); the Rehabilitation Act, 29 U.S.C. § 791(g); and 42 U.S.C. § 1981.

Potter has moved to dismiss the complaint for failure to state a claim, or in the alternative for summary judgment. He argues that Davenport failed properly to exhaust internal equal employment opportunity (EEO) remedies within the Postal Service before filing suit. Title VII, the ADA, and the Rehabilitation Act each require exhaustion of administrative remedies as a prerequisite to filing suit (though 42 U.S.C. § 1981 does not). *See* 42 U.S.C. § 2000e-16(c) (Title VII); 42 U.S.C. § 12117(a) (ADA); *McGuiness v. U.S. Postal Service,* 744 F.2d 1318, 1319 (7th Cir. 1984) (Rehabilitation Act). Equal Employment Opportunity Commission

regulations require that federal employees exhaust administrative remedies by, among other things, seeking equal employment opportunity (EEO) counseling within forty-five days of the date of the alleged discrimination. 29 C.F.R. § 1614.105(a)(1). According to Potter, Davenport failed to satisfy this requirement.

For the following reasons, the Court denies Potter's motion.

## Facts

Davenport is an African-American woman who worked as a mail carrier for approximately twelve years. She appears to claim that she was injured on the job in September 2003. As a result, Davenport says, she was restricted in the work she could perform. She remained employed by the Postal Service following the injury, though it is unclear whether she worked as a full time or part time employee.

Sometime in 2005, the Postal Service terminated Davenport's employment. Exactly when this occurred appears to be disputed, a point that the Court will address momentarily. The parties appear to agree that Davenport sought EEO counseling on October 12, 2005. For various reasons, Potter argues that this does not satisfy the requirement that Davenport exhaust administrative remedies in timely fashion before filing suit in court.

The basis for Davenport's claims in this case is less than crystal clear from the papers she has filed. The Court believes, however, that it has been able to sort out what Davenport is claiming, at least to the extent necessary to rule on Potter's motion to dismiss or for summary judgment.

Davenport's initial *pro se* complaint was filed on a form provided by the Clerk. Because Davenport had not filled in a number of the sections on the form, the Court directed her to submit an amended complaint, using the same form. In her amended complaint, Davenport

2

stated that she was pursuing claims of disability discrimination and race discrimination.

*See* Am. Compl. ¶¶ 9 & 10.  She stated that her claim involved denial of employment and failure

to accommodate her disabilities.  *See id.* ¶ 12.  Somewhat confusingly, however, Davenport

alleged that the discrimination took place on or about November 18, 2005 – even though she said

she had filed a complaint about discrimination two months earlier than that, on September 18,

2005.  *Id.* ¶¶ 6 & 7.

In his motion seeking dismissal or summary judgment, Potter relied, understandably, on

Davenport's allegation that she had been discriminated against on November 18, 2005.  He

submitted evidence that Davenport had not pursued any internal Postal Service EEO remedies

after that date and that Davenport's only internal EEO claim was one that she had submitted on

October 12, 2005.  Potter therefore argued that Davenport could not pursue a claim based on

discrimination in November 2005 because she had failed to exhaust internal EEO remedies with

regard to that claim.  Potter also argued that if Davenport intended to assert, in this case, the

same claim she had made in her October 12, 2005 internal EEO complaint, that internal EEO

complaint had been made too late, because it challenged Davenport's termination, which Potter

said had taken place on June 14, 2005.

In her response to Potter's motion, Davenport stated that she made an initial complaint in

June 2005.[1]  As best as the Court can determine, Davenport must be referring to a *verbal*

complaint; she has provided no copy of a written June 2005 complaint.  In her response,

---

[1]  Davenport's response includes two unsworn declarations, one from Davenport herself and one
from her sister Jacqueline Johnson.  Because Potter does not contend that the Court should
disregard these statements because they are unsworn, the Court will accept both as proffers of
testimony that Davenport and Johnson would give and will consider them in ruling on Potter's
summary judgment motion.

Davenport contended that after making this complaint, she was harassed for a period of time and then was terminated. In her response, Davenport stated that after she was terminated, she prepared a written complaint, dated September 24, 2005, a copy of which she attached to her response to Potter's motion.

In her September 24, 2005 written complaint, Davenport provided information regarding when Davenport claims she was terminated. Specifically, she alleged that on September 9, 2005, she was called to her manager's office and was told to leave without punching out on the time clock. When she asked why, she was told that she had to be "clear[ed]" by the medical department. She went to the medical department but was eventually sent to see a Postal Service employee named Helen Loften. Loften allegedly advised Davenport that she was terminated, "effective June 2005," but did not tell her why. In her written complaint, Davenport stated that she believed she had been terminated due to her gender, her complaints about heavy work, and an injury she had suffered on the job in September 2003.

In her response to Potter's motion, Davenport also states that she also filled out a Postal Service EEO complaint form, attached to her response as exhibit C. (This, the Court assumes, is the same document that Potter identifies as Davenport's internal complaint submitted on Octoebr 12, 2005.) Davenport appears to state that she filled out this form on September 24, 2005. *See* Pl.'s Resp. ¶ 3. She says that Robert Turner, a union representative, told her to "backdate the complaint one week using 8-29-05 as the date of discrimination." *Id.* Davenport contends that she gave Turner a copy of her written statement (that is, exhibit A to her response) and asked him to staple it to the EEO complaint form. Turner made a copy and gave the original statement back to Davenport. She says that she Turner asked for a copy of the EEO complaint form but was refused. Davenport has also submitted a statement from Jacqueline Johnson, her

4

sister, who says that on Davenport's behalf, she called Turner in late September or October 2005 and asked if he had attached Davenport's written statement to her EEO complaint. Turner said no but stated that he had, in fact, submitted Davenport's complaint to the appropriate Postal Service personnel.

Records attached to Potter's motion appear to indicate that the Postal Service received Davenport's written complaint on October 12, 2005; the records also characterize this as Davenport's "initial contact" with the appropriate Postal Service personnel. These same records reflect that an "initial interview" with Davenport, and a mediation session, took place on October 28, 2005. In an affidavit attached to Potter's motion, a Postal Service representative states that based on the Service's database, the complaint that Davenport says she submitted on September 24, 2005, and that the Postal Service says it received on October 12, 2005, is the only "case of discrimination" that Davenport initiated from 1998 through the present.

## Discussion

The Court begins with Potter's motion to dismiss. The requirement that a government employee make an internal EEO claim within forty-five days is not jurisdictional; it is construed as a statute of limitations. *See, e.g., Johnson v. Runyon,* 47 F.3d 911, 917 (7th Cir. 1995). The statute of limitations is an affirmative defense. *See* Fed. R. Civ. P. 8(c); *see also, e.g., Hatch v. Briley,* ___ F.3d ___, 2007 WL 1175650, at *1 (7th Cir. Apr. 19, 2007). "Complaints need not plead around or anticipate affirmative defenses." *Hatch,* 2007 WL 1175650, at *1. Dismissal under Rule 12(b)(6) on limitations grounds nonetheless might be appropriate were it indisputable from Davenport's complaint that her claim is time-barred. *See, e.g., Small v. Chao,* 398 F.3d 894, 898 (7th Cir. 2005). But that is not the case here. Because there is nothing in Davenport's

complaint that establishes that her initiation of EEO counseling was untimely, the Court denies Potter's motion to dismiss.

In considering Potter's motion for summary judgment, the Court must view the facts in the light most favorable to Davenport and draw reasonable inferences in her favor. The Court cannot grant summary judgment to Potter unless there is no genuine issue of material fact and he is entitled to judgment as a matter of law. *See, e.g., Carreon v. Ill. Dep't of Human Svcs.*, 395 F.3d 786, 790 (7th Cir. 2005).

Davenport's position is that she first learned on September 9, 2005 that the Postal Service was terminating her employment, retroactive to June 2005. Davenport says she submitted her written internal EEO complaint on September 24, 2005; the Postal Service says it received the complaint on October 12, 2005. This complaint, as best as the Court can determine, qualifies as the request for EEO counseling required by federal regulations as a prerequisite to filing suit in court. October 12, 2005 is well within forty-five days of the date on which Davenport says she first learned she had been terminated.

Potter contends that Davenport was actually terminated on June 14, 2005. He has offered no evidence, however, that anyone told Davenport this at any time before September 9, 2005. Even if Potter had offered such evidence, the date on which Davenport first learned of her termination would be a genuinely disputed issue of fact. For this reason, the Court cannot appropriately grant summary judgment against Davenport on her claim of wrongful termination. (In her response to Potter's motion, Davenport does not appear to assert any claim other than a claim relating to her termination.)

Potter appears to contend that assuming Davenport was first told on September 9, 2005 that she had been fired on June 14, 2005, her internal EEO complaint came too late because she

did not use continuous diligence to determine her employment status between those two dates. *See* Def.'s Reply ¶ 5.[2]  This argument, like Potter's primary argument, does not provide a proper basis upon which to grant summary judgment.  Even if it were undisputed that Davenport actually was terminated on June 14, 2005 – as opposed to being told, at a later time, that her termination was being backdated to that date – Potter has not provided evidence sufficient to establish the lack of a genuine issue of material fact on the question of Davenport's diligence in the interim period.  As a practical matter, an employee can hardly be expected to inquire of her supervisor on a daily or weekly basis if she still has a job; at some point, this would almost certainly result in the employee being labeled as eccentric, at the very least.  As a legal matter, the Seventh Circuit has made it clear that the running of a statute of limitations is equitably tolled if, through no fault of his own, the plaintiff was unable to sue within the limitations period but sued as soon as she could.  *See Elmore v. Henderson,* 227 F.3d 1009, 1013 (7th Cir. 2000).  On the present record, the Court is required to credit Davenport's contention that she had no idea until September 9, 2005 that she had been terminated.  Under the circumstances, there are (at a minimum) a genuine issue of fact as to whether Davenport was sufficiently diligent and whether she sued as soon as she could.

### Conclusion

For the reasons stated above, the Court denies defendant's motion to dismiss or for

---

[2]  It is not clear from the parties' submissions whether Davenport was actually working between June 2005 and September 9, 2005.

summary judgment [docket no. 15].  The case is set for a status hearing on June 14, 2007 at 9:30 a.m.

_____
MATTHEW F. KENNELLY
United States District Judge

Date:   May 30, 2007